Citation Nr: AXXXXXXXX
Decision Date: 09/30/21 Archive Date: 09/30/21

DOCKET NO. 200821-105114
DATE: September 30, 2021

ORDER

1. Entitlement to service connection for a thoracolumbar spine disability, to include lumbar stenosis with degenerative changes and L5-S1 disc herniation, degenerative changes and degenerative disc disease at T4-T5, T5-T6, T6-T7, degenerative arthritis of the spine, intervertebral disc syndrome (IVDS), and spinal stenosis, is denied.

2. Entitlement to service connection for a cervical spine disability, to include IVDS, spondylosis, degenerative disc disease, degenerative arthritis of the spine, spinal stenosis, and spondylolisthesis, is denied.

FINDINGS OF FACT

1. The preponderance of the evidence is against a finding that the current thoracolumbar spine disability had its onset in service, was manifested within one year of service discharge, or is otherwise related to service.

2. The preponderance of the evidence is against a finding that the current cervical spine disability had its onset in service, was manifested within one year of service discharge, or is otherwise related to service.

CONCLUSIONS OF LAW

1. The criteria for service connection for a thoracolumbar spine disability, to include lumbar stenosis with degenerative changes and L5-S1 disc herniation, degenerative changes and degenerative disc disease at T4-T5, T5-T6, T6-T7, degenerative arthritis of the spine, IVDS, and spinal stenosis, have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

2. The criteria for service connection for a cervical spine disability to include IVDS, spondylosis, degenerative disc disease, degenerative arthritis of the spine, have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from November 1970 to August 1973.

The Veteran's appeal falls under the Appeals Modernization Act of 2019. Following the denial of the claims for service connection for thoracolumbar spine and cervical spine disabilities, the Veteran submitted a VA Form 10182, Decision Review Request: Board Appeal, and elected the Hearing docket. This means that the Board may consider only the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, which was in July 2020, as well as any evidence submitted by the Veteran or his representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a). 

For background purposes, claims for service connection for cervical, thoracic, and lumbar spine disabilities were denied in a July 2003 rating decision. The Veteran did not appeal the decision, and it became final. In December 2019, the Veteran submitted supplemental claims for service connection for cervical, thoracic and lumbar spine disabilities. In the July 2020 rating decision on appeal, the AOJ found new and relevant evidence had been received and reconsidered the claims and denied them. 

In April 2021, the Veteran provided testimony at a virtual Board hearing before the undersigned Veterans Law Judge (VLJ). A copy of the hearing transcript is associated with the claims file. Following the April 2021 hearing, the Veteran submitted additional evidence, including information on cervical spinal fusion and private medical opinions. The case is ready for appellate review. 

The AOJ has considered the thoracic and lumbar spine disabilities together, as VA rates them as one disability. The Board has followed this same format, which was the same format laid out at the April 2021 hearing. 

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131. Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); 38 U.S.C. § 5103(a).

Additionally, where a veteran served 90 days or more of active service, and certain chronic diseases, such as arthritis, become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.307, 3.309(a).

1. Entitlement to service connection for a thoracolumbar spine disability

The Veteran asserts that his thoracolumbar spine disability is due to his military service. During his Board hearing, he testified that he volunteered to demonstrate an ejection seat simulator. He said that he demonstrated the seat for three, different classes and that is how he believes he sustained the injury. The Veteran testified that each time he did the demonstration, he blacked out and does not remember what happened.

Following a careful review of the evidence of record, the Board finds that the preponderance of the evidence is against the claim for service connection for a thoracolumbar spine disability. The reasons follow.

As to evidence of a current disability, a June 2020 VA examination report documents lumbar stenosis with degenerative changes and L5-S1 disc herniation, as well as degenerative changes and degenerative disc disease at T4-T5, T5-T6, T6-T7. Additionally, a subsequent July 2020 VA examination report also documents degenerative arthritis of the spine, IVDS, and spinal stenosis. Thus, there is evidence of a current thoracolumbar spine disability, and the first element of a service-connection claim is met.

Regarding in-service incurrence or aggravation of a disease or injury, the Veteran has alleged he participated in an ejection seat simulator demonstration on at least three occasions. He believes he sustained an injury or injuries as a result of these three demonstrations. He stated he blacked out during each demonstration, where he would not remember what happened, but felt he experienced forces on his body that caused injuries to his cervical and thoracolumbar spine. The Veteran stated he did not seek treatment while in service. He stated that the mindset is that through basic training, one did not complain about things and just dealt with the pain. The Veteran testified he also did not want to get sent back where he would have to undergo the training again. He also stated that he understood how serious it was to document issues like this. The Veteran stated that while he did not seek treatment during service, he experienced "serious pain." 

Of record are minimal service treatment records from the Veteran's period of active duty from November 1970 to August 1973. Of record are the August 1970 enlistment Reports of Medical Examination and Medical History and some other records, which do not document clinical findings. The separation Reports of Medical Examination and History are not part of the service treatment records. However, within the service treatment records, there are July 1975 Reports of Medical Examination and History, when the Veteran was enlisting with the Army National Guard, which were done approximately two years following service discharge and contain relevant information. For example, in the July 1975 Report of Medical Examination, it shows that clinical evaluation of the Veteran's spine and other musculoskeletal system was normal. Under "Summary of Defects and Diagnoses," the examiner wrote, "No defects." The Veteran was assigned a "1" in each category of the Physical Profile Serial of PULHES, where P stands for physical capacity or stamina, U stands for upper extremities, L stands for lower extremities, H stands for hearing and ears, E stands for eyes, and S stands for psychiatric. The rating of "1" under P represents a high level of fitness for physical capacity or stamina. See Odiorne v. Principi, 3 Vet. App. 456, 457 (1992). 

In the July 1975 Report of Medical History, the Veteran documented that he was in good health and denied a history of arthritis, rheumatism, or bursitis; bone, joint, or other deformity; recurrent back pain; and periods of unconsciousness. He checked positive histories for broken bones and painful or trick shoulder. The Veteran documented a positive history of being advised to have an operation and being a patient in a hospital. He wrote that he had a pin put in his left shoulder after separating the left acromioclavicular joint playing football in 1969. He noted that the pin broke and that in 1972, he had the outermost portion of the pin removed, and then in April 1975, he had the remaining part of the pin removed. The Veteran denied an illness or injury other than those already noted on the form. In the part of the document where the examiner addresses any pertinent facts, the examiner wrote, "All items pertain to left shoulder. Denies current symptoms." 

The Board has carefully considered the Veteran's testimony about what happened in service, the fact that he experienced pain, which the Board presumes relates to the neck and lower back while in service, and the allegation that he blacked out during these demonstrations. The post service treatment records do not support the Veteran's allegations of what happened during service. For example, within the July 1975 Report of Medical History, he denied a history of periods of unconsciousness, which the Board finds refutes his allegations of having blacked out during service. He also denied a history of recurrent back pain and an illness or injury other than those documented on the form, which refutes the Veteran's allegations of in-service injury or injuries that resulted in pain that continued after service discharge. 

Further supporting this finding is that the Veteran took care in documenting the history involving his left shoulder in the July 1975 Report of Medical History, which he documented was injured in 1969, the surgeries he underwent in 1972 and 1975, and pointing out that he no longer experienced symptoms involving his left shoulder. The Veteran took similar care in completing the Report of Medical History in August 1970 as he entered his period active duty. He documented the pre-service injury and the fact that he was treated for shoulder separation. As a result, he had to undergo a more detailed physical examination, where his left shoulder was addressed in more detail to see if he was qualified for service in 1970. 

Thus, the Veteran was detailed in reporting his medical history in both the August 1970 and July 1975 Reports of Medical History, which did not include either current or past thoracolumbar spine pain. Additionally, within the July 1975 Report of Medical History, the Veteran addressed a medical history going back six years to 1969, which was prior to his period of active duty, and reported a positive history of shoulder problems with surgery as recent as 1975. The Board finds that if the Veteran had experienced low back pain since an injury or injuries during service from 1970 to 1973, which symptoms would have occurred within the six-year period that he covered in the 1975 Report of Medical History, he would have documented such in response to the questions of whether he had experienced recurrent back pain and/or the part of the form that asked about an illness or injury not otherwise addressed. Instead, he denied a history of recurrent back pain, and his spine was found to be clinically normal two years following discharge from active duty. The Board finds that this is strong evidence against an in-service injury and continuing symptoms involving the thoracolumbar spine. 

This finding is further supported by the post-service medical records that show the Veteran sought treatment for his back in November 1989. The examiner wrote the Veteran reported that these symptoms had "gone on for five years," which would place the onset of his symptoms in approximately 1984, which is 11 years since service discharge. Statements made contemporaneously with the time period in question and statements made while seeking treatment tend to be highly reliable. The 1975 Reports of Medical Examination and History and the November 1989 private treatment records do not support an in-service injury that resulted in chronic low back pain since service. Thus, the Board finds that the preponderance of evidence weighs against a finding that the Veteran experienced a disease or injury involving the thoracolumbar spine during active service and finds the Veteran's allegations of in-service injury or injuries are not credible. 

In December 2019, the Veteran submitted a buddy statement from W.L.N., which was dated February 2019. W.L.N. wrote that all aircrew members were required to train on the use of the Martin-Baker MK-5B ejection seat. He stated that it was during this training when he met the Veteran, and the Veteran told him that it was his third training event with the training device. W.L.N. wrote the Veteran was used as an example for the classes, so that the individuals watching would not feat the training on the ejection seat. W.L.N. stated that a number of trainees actually suffered minor or greater injuries and many blacked out. W.L.N. wrote that his one ejection resulted in three days of back pain and distress, and he could not imagine what damage could result in accomplishing the training three times. 

To the extent that W.L.N. witnessed the Veteran at the training, the Board finds this statement to be credible. However, as to the part of the statement by W.L.N. that he could not imagine what damage could result in accomplishing the training three times and the fact that he endured back pain for three days, the Board finds that this statement does not establish that the Veteran sustained a disease or injury to his low back during service. This statement is insufficient to establish the Veteran actually injured his back in service. Regardless, the Board accords more probative value to what the Veteran documented in the 1975 Report of Medical History, where he denied a history of recurrent back pain and an illness or injury not otherwise documented on the form. 

Therefore, for all the reasons laid out above, the Board finds the second element of a service-connection claim, which is evidence of a disease or injury during service, is not met.

Additionally, there is no competent evidence that thoracolumbar spine arthritis first manifested to a compensable degree within one year of the Veteran's August 1973 separation from active service. As noted above, the July 1975 Report of Medical History and Report of Medical Examination document that the Veteran denied a history of recurrent back pain, and his spine was found to be clinically normal. As such, presumptive service connection for a thoracolumbar spine disability as a chronic disease is not warranted.

As to direct service connection, the preponderance of the evidence is also against a nexus between the current thoracolumbar spine disability and service. As addressed above, the Veteran denied a history of recurrent back pain approximately two years following service discharge, and his spine was found to be clinically normal at that time. The November 1989 private treatment record addressed above documents the Veteran reporting the onset of back and leg symptoms as being five years prior. The examining physician stated that he explained to the Veteran that he was not sure what was going on but noted it did not seem to be an acute disk problem since the Veteran's symptoms had gone on for five years. X-rays taken at that time were "basically normal." Additionally, an October 2002 VA medical treatment record shows that the Veteran was a new patient, and he reported having low back pain since 2001. Thus, these records show the Veteran denying recurrent back pain two years after service discharge and attributing the onset of his low back pain to approximately 1984 and 2001, both of which is 11 years or more since service discharge. The contemporaneous evidence does not support a nexus between the post-service thoracolumbar spine disability and service. For these reasons, the Board finds the Veteran's allegations of chronic low back symptoms since service discharge are not credible. 

Within a December 2002 private treatment record, when seen for neck pain and low back pain, Dr. Eeric Truumees wrote, "[The Veteran] attributes most of his problems to ejecting out of an ejector seat when he was in the military in the [19]70's. He had a myelogram at that time." The Board finds that this is not the examiner providing a nexus to service but rather documenting the Veteran's report of facts. However, to the extent that this would be construed as a positive nexus statement, the Board finds this opinion is not probative, as the examiner was basing the statement on history reported by the Veteran, which history the Board finds is not credible. A medical opinion based on an inaccurate factual premise is not probative. 

This same conclusion applies to the April 2003 letter from Dr. Ghaus Malik, who wrote the Veteran presented with complaints of neck and low back pain for the past 20 to 30 years. Thirty years would place the onset in 1973. Dr. Malik's statement is not a nexus, but a statement based on the Veteran reporting this fact, which fact is found not credible. 

The Veteran was afforded a VA examination in June 2020. The examiner concluded that the thoracolumbar spine disability was less likely than not (less than 50 percent probability) incurred in or caused by an in-service injury, event or illness, despite the Veteran's lay statements and the Buddy Statement submitted by W.L.N. The examiner stated that although the Veteran stated his lumbar spine symptoms began in the service, there is no medical evidence to support his allegation. The examiner wrote the available medical evidence supports medical treatment for a lower lumbar spine condition, degenerative changes (stenosis) resulting in intervertebral disc syndrome (degenerative disc disease), which began around 1984. The examiner wrote the lower lumbar spine followed the normal progression of degenerative changes leading to decompression laminectomy in December 1998. The examiner noted the December 2002 private treatment records document the Veteran did well for two years after surgery, but the pain began to return. 

The examiner wrote that although the Veteran stated his thoracic and lumbar spine symptoms began in the service, she found no medical evidence to support his allegation. She noted the Veteran reported he was able to fulfill his military obligation on full duty and was not medically discharged. He was able to work in the telecommunication sector for at least 25 years and drove a school bus after discharge. The examiner wrote that in order to drive a school bus, the Veteran had to meet the physical requirements of the Department of Transportation (DOT) physical exam to be issued a "DOT card." The examiner found the available medical evidence supports medical treatment for a thoracic spine condition, degenerative disc disease, which caused the intervertebral disc syndrome, beginning around March 2003, which the examiner noted was 30 years after discharge from the service. 

The examiner noted that in addition, after the first lumbar surgery, the Veteran sustained significant trauma to his left lower leg related to a fall off an icy roof in January 2001. The injured leg required six surgeries and the examiner stated that this type of trauma could also aggravate the thoracic and lumbar spine conditions. Following the fall, the lumbar spine had an increase in pain along the left lumbar region. The examiner noted the November 2002 MRI showed the decompression site looked good with minimal stenosis and an annular tear at L5-S1 without nerve root compression. The examiner documented the Veteran was neurologically intact at that time. However, in January 2003, the radicular pain returned. Based on the medical evidence and dates of onset, the examiner found it was less likely than not the thoracic and lumbar spine condition was incurred in or caused by an in-service injury, event, or illness. 

In July 2020, the Veteran was provided another VA examination. The examiner concluded that it was less likely than not that the claimed condition of IVDS (stenosis and spondylosis) was incurred in or caused by an in-service injury, event, or illness. The examiner noted that there is no documentation or separation exam showing evidence in the Veteran's claims file that there was an injury during those years. The examiner also noted that the Veteran had a diagnosis of IVDS but that the documents in the Veteran's claim file are from decades after his time in the service.

During the Board hearing, the Veteran's representative read a letter from Dr. Martin Hauswirth into the record. The letter stated that the Veteran had a history of aviation training, including ejection seat training. The Veteran stated that G-force during this time was enough to cause black outs, which is indicative of high-speed compression forces that would occur in an ejection seat. Dr. Hauswirth stated it is well understood that a full ejection seat deployment can lead up to 300 Gs of instantaneous force on the low spine. Dr. Hauswirth explained this is the reason why multiple ejection seat deployments during a military career can lead to grounding. He wrote if it can be shown that the Veteran had greater than the typical G force on his low back, it is as reasonably as not that his military training did lead to his low back pain. 

While the Board has considered the positive April 2021 private opinion by Dr. Hauswirth, the Board finds that it is of no probative value given that it is stated in speculative terms using the word "can." Given the speculative nature of this opinion, it does not weigh in favor of the Veteran's claim.

In July 2021, the Veteran submitted a letter from James MacKenzie, M.D. Dr. MacKenzie stated that the Veteran is currently under his care for his chronic low back and neck pain. He stated that he believes it is at least as likely as not that the Veteran's military service has played a significant role in the development of his cervical spine problems, as well as his ongoing chronic low back pain issues. 

A similar opinion was rendered by Tracy Riddle, D.O., in July 2021. Dr. Riddle wrote that the Veteran was under her care for multifactorial chronic low back pain. She also stated that she believes that it is at least as likely as not that the Veteran's military service has played a significant role in the development of his lumbar spine problems, including chronic back pain, sacroiliitis, and post-lumbar laminectomy syndrome, as well as his ongoing cervical pain issues. 

Dr. MacKenzie nor Dr. Riddle included a rationale for the conclusions made. A medical opinion without a rationale has no probative value. Therefore, Dr. MacKenzie and Dr. Riddle's medical opinions are not probative. 

As such, the Board finds that the medical opinions submitted by the Veteran are not probative. However, the Board finds that the VA opinions from June 2020 and July 2020, collectively, are highly probative, as the examiners conducted in-person examinations, reviewed the record, including the Veteran's lay statements and the statement from W.L.N., and provided opinions that addressed the facts of the case and used medical principles that considered whether the Veteran's thoracolumbar spine disability was caused by or was otherwise related to service. They both relied on facts that the Board finds are accurate. Specifically, both examiners did not find evidence of a disease or injury in service and did not find evidence of continuing symptoms in the years following service discharge, which facts were used to find that the evidence did not support a nexus.

In a July 2020 statement, the Veteran said he felt the July 2020 VA examiner was more professional and objective and asked for VA to review and consider the second examination. As noted previously, the Board finds both the June 2020 and July 2020 VA examinations to be adequate, and the July 2020 opinion is also a negative opinion. Accordingly, the preponderance of the probative evidence is against a nexus between the current disability and service, and service connection for a thoracolumbar spine disability on a direct basis is not warranted.

While the Veteran believes that the thoracolumbar spine disability is related to service, he is not competent to offer nexus opinion as to the etiology of his thoracolumbar spine disability, as medical expertise is needed. In this regard, the question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the Veteran's own opinion is nonprobative evidence. At the present time, the preponderance of the evidence is against a finding that the thoracolumbar spine disability is caused or due to his military service. Additionally, there is no competent and probative evidence to support the Veteran's claim to weigh against the negative VA nexus opinions. As stated above, the positive opinions are speculative or do not provide a rationale for the conclusions reached. 

In conclusion, for all the reasons described above, the Board finds that the preponderance of evidence weighs against the Veteran's claim for service connection for a thoracolumbar spine disability, to include lumbar stenosis with degenerative changes and L5-S1 disc herniation, degenerative changes and degenerative disc disease at T4-T5, T5-T6, T6-T7, degenerative arthritis of the spine, IVDS, and spinal stenosis. As such, there is no reasonable doubt to be resolved, and the claim for service connection on direct and presumptive bases is denied.

2. Entitlement to service connection for a cervical spine disability

The Veteran asserts that his cervical spine disability is due to his military service. During his Board hearing, he testified that he volunteered to demonstrate an ejection seat simulator. He said that he demonstrated the seat for three, different classes and that is how he believes he sustained the injury. The Veteran testified that each time he did the demonstration, he blacked out and does not remember what happened.

Following a careful review of the evidence of record, the Board finds that the preponderance of the evidence is against the claim for service connection for a cervical spine disability. The reasons follow.

As to evidence of a current disability, a June 2020 VA examination report shows diagnoses of IVDS, spondylosis, and degenerative disc disease. Additionally, a subsequent July 2020 VA examination report also documents degenerative arthritis of the spine, IVDS, spinal stenosis, and spondylolisthesis. Thus, there is evidence of a current cervical spine disability, and the first element of a service-connection claim is met.

Regarding in-service incurrence or aggravation of a disease or injury, the Veteran has alleged he participated in an ejection seat simulator demonstration on at least three occasions. He believes he sustained an injury or injuries as a result of these three demonstrations. He stated he blacked out during each demonstration, where he would not remember what happened, but felt he experienced forces on his body that caused injuries to his cervical and thoracolumbar spine. The Veteran stated he did not seek treatment while in service. He stated that the mindset is that through basic training, one did not complain about things and just dealt with the pain. The Veteran testified he also did not want to get sent back where he would have to undergo the training again. He also stated that he understood how serious it was to document issues like this. The Veteran stated that while he did not seek treatment during service, he experienced "serious pain." 

Of record are minimal service treatment records from the Veteran's period of active duty from November 1970 to August 1973. Of record are the August 1970 enlistment Reports of Medical Examination and Medical History and some other records, which do not document clinical findings. The separation Reports of Medical Examination and History are not part of the service treatment records. However, within the service treatment records, there are July 1975 Reports of Medical Examination and History, when the Veteran was enlisting with the Army National Guard, which were done approximately two years following service discharge and contain relevant information. For example, in the July 1975 Report of Medical Examination, it shows that clinical evaluations of the Veteran's neck and spine and other musculoskeletal system were normal. Under "Summary of Defects and Diagnoses," the examiner wrote, "No defects." The Veteran was assigned a "1" in each category of the Physical Profile Serial of PULHES, where P stands for physical capacity or stamina, U stands for upper extremities, L stands for lower extremities, H stands for hearing and ears, E stands for eyes, and S stands for psychiatric. The rating of "1" under P represents a high level of fitness for physical capacity or stamina. See Odiorne v. Principi, 3 Vet. App. 456, 457 (1992).

In the July 1975 Report of Medical History, the Veteran documented that he was in good health and denied a history of arthritis, rheumatism, or bursitis; bone, joint, or other deformity; recurrent back pain; and periods of unconsciousness. He checked positive histories for broken bones and painful or trick shoulder. The Veteran reported a positive history of being advised to have an operation and being a patient in a hospital. He documented that he had a pin put in his left shoulder after separating the left acromioclavicular joint playing football in 1969. He noted that the pin broke and that in 1972, he had the outermost portion of the pin removed, and then in April 1975, he had the remaining part of the pin removed. The Veteran denied an illness or injury other than those already noted on the form. In the part of the document where the examiner addresses any pertinent facts, the examiner wrote, "All items pertain to left shoulder. Denies current symptoms."

The Board has carefully considered the Veteran's testimony about what happened in service, the fact that he experienced pain, which the Board presumes relates to the neck and lower back while in service, and the allegation that he blacked out during these demonstrations. The Board finds that the post service treatment records do not support the Veteran's allegations of what happened during service. For example, within the July 1975 Report of Medical History, he denied a history of periods of unconsciousness, which the Board finds refutes his allegations of having blacked out during service. He also denied a history of an illness or injury other than those documented on the form, which does not support the Veteran's allegation of in-service injury or injuries that resulted in pain that continued after service discharge. 

Further supporting this finding is that the Veteran took care in documenting the history involving his left shoulder in the July 1975 Report of Medical History, which he documented was injured in 1969, the surgeries he underwent in 1972 and 1975, and pointing out that he no longer experienced symptoms involving his left shoulder. The Veteran took similar care in completing the Report of Medical History in August 1970 as he entered his period active duty. He documented the pre-service injury and the fact that he was treated for shoulder separation. As a result, he had to undergo a more detailed physical examination, where his left shoulder was addressed in more detail to see if he was qualified for service in 1970. 

Thus, the Veteran was detailed in reporting his medical history in both the August 1970 and July 1975 Reports of Medical History, which did not include neck or cervical spine pain. Additionally, within the July 1975 Report of Medical History, the Veteran addressed a medical history going back six years to 1969, which was prior to his period of active duty, and reported a positive history of shoulder problems with surgery as recent as 1975. The Board finds that if the Veteran had experienced neck or cervical spine pain since an injury or injuries during service from 1970 to 1973, which symptoms would have occurred within the six-year period that he covered in the 1975 Report of Medical History, he would have documented such in response to the questions of whether he had experienced recurrent back pain and/or the part of the form that asked about an illness or injury not otherwise addressed. Instead, he denied an illness or injury not otherwise reported, and his neck and spine were found to be clinically normal two years following discharge from active duty. The Board finds that this is strong evidence against an in-service injury and continuing symptoms involving the cervical spine. 

Thus, the Board finds that the preponderance of evidence weighs against a finding that the Veteran experienced a disease or injury involving the cervical spine during active service and finds the Veteran's allegations of in-service injury or injuries are not credible. Therefore, for all the reasons laid out above, the Board finds the second element of a service-connection claim, which is evidence of a disease or injury during service, is not met.

Additionally, there is no competent evidence that cervical spine arthritis manifested to a compensable degree within one year of the Veteran's August 1973 separation from active service. As noted above, the July 1975 Report of Medical Examination shows that clinical evaluations of the neck and spine were both normal. As such, presumptive service connection for a thoracolumbar spine disability as a chronic disease is not warranted.

As to direct service connection, the preponderance of the evidence is also against a nexus between the current cervical spine disability and service. As addressed above, the Veteran denied a history of an illness or injury approximately two years following service discharge, and his neck and spine were found to be clinically normal at that time. The 1989 treatment records pertaining to the Veteran's lower back do not document neck complaints at that time. The Veteran had been receiving treatment for low back pain in 1998 and 1999 by Dr. Stephen Boodin. An April 2000 private treatment record seems to document "cervical neck pain" in the problem list, but there is a no discussion as to the onset of the symptoms. In a December 2001 treatment record, Dr. Boodin wrote, "[The Veteran] comes back now because of his neck. He has had some neck pain for several months[,] and he gets numbness in his hands that seems to wake him up at night." Thus, the first documentation of neck pain following service discharge is in 2000 and 2001, which pain had been occurring for months, which is more than 25 years following service discharge. This does not lend to a finding of the Veteran having chronic neck or cervical spine pain since service discharge. 

The Veteran was afforded a VA examination in June 2020. The examiner concluded that the cervical spine disability was less likely than not (less than 50 percent probability) incurred in or caused by an in-service injury, event or illness, despite the Veteran's lay statements. The examiner explained that although the Veteran stated his cervical spine symptoms began in the service, there is no medical evidence to support his allegation. The examiner noted the Veteran reported he was able to fulfill his military obligation on full duty and was not medically discharged. He was able to work in the telecommunication sector for at least 25 years and drove a school bus after discharge. The examiner wrote that in order to drive a school bus, he had to meet the physical requirements of the DOT physical exam to be issued a DOT card. 

The examiner noted the available medical evidence supports medical treatment for a cervical spine condition, degenerative changes and intervertebral disc syndrome, was first noted in December 1998, this was 25 years after discharge from the service. Based on the medical evidence and dates of onset, the examiner found that the cervical spine disability, to include intervertebral disc syndrome, stenosis, and spondylosis, is less likely than not caused by a cervical spine disability during service.

In July 2020, the Veteran was provided another VA examination. The examiner concluded that it was less likely than not that the claimed condition of IVDS (stenosis and spondylosis) was incurred in or caused by an in-service injury, event, or illness. The examiner noted that there is no documentation or separation exam showing evidence in the Veteran's claims file that there was an injury during those years. The examiner also noted that the Veteran had a diagnosis of IVDS, however, the documents in the Veteran's claim file are from decades after his time in the service.

Within a December 2002 private treatment record, when seen for neck pain and low back pain, Dr. Eeric Truumees wrote, "[The Veteran] attributes most of his problems to ejecting out of an ejector seat when he was in the military in the [19]70's. He had a myelogram at that time." The Board finds that this is not the examiner providing a nexus to service but rather documenting the Veteran's report of facts. However, to the extent that this would be construed as a positive nexus statement, the Board finds this opinion is not probative, as the examiner was basing the statement on history reported by the Veteran, which history the Board finds is not credible. A medical opinion based on an inaccurate factual premise is not probative. 

This same conclusion applies to the April 2003 letter from Dr. Ghaus Malik, who wrote the Veteran presented with complaints of neck and low back pain for the past 20 to 30 years. Thirty years would place the onset in 1973. Dr. Malik's statement is not a nexus, but a statement based on the Veteran reporting this fact, which fact is found not credible. 

In December 2019, the Veteran submitted a letter from R. Blaine Rawson, M.D. The letter contained areas where the doctor could fill in the blanks. Dr. Rawson stated that he had been treating the Veteran since July 2019 for cervical spondylosis and he agreed that it is as least as likely as not that the service-connected condition or its treatment caused or aggravated the claimed disability. Further, secondary conditions of disc displacement are another factor to include in his VA claim, of which he has also medically treated since July 2019. The opinion from Dr. Rawson did not include a rationale for the conclusion made. A medical opinion without a rationale has no probative value.

In July 2021, the Veteran submitted a letter from James MacKenzie, M.D. Dr. MacKenzie stated that the Veteran is currently under his care for his chronic low back and neck pain. He also stated that he believes it is at least as likely as not that the Veteran's military service has played a significant role in the development of his cervical spine problems, as well as his ongoing chronic low back pain issues. 

A similar opinion was rendered by Tracy Riddle, D.O. in July 2021. Dr. Riddle stated that the Veteran was under her care for multifactorial chronic low back pain. She also stated that she believes that it is at least as likely as not that the Veteran's military service has played a significant role in the development of his lumbar spine problems, including chronic back pain, sacroiliitis, and post-lumbar laminectomy syndrome, as well as his ongoing cervical pain issues. 

Neither Dr. MacKenzie nor Dr. Riddle included a rationale for the conclusion made. A medical opinion without a rationale has no probative value. Therefore, Dr. MacKenzie and Dr. Riddle's medical opinions are not probative. 

As such, the Board finds that the medical opinions submitted by the Veteran are not probative. However, the Board finds that the VA opinions from June 2020 and July 2020, collectively, are highly probative, as the examiners conducted in-person examinations, reviewed the record, including the Veteran's lay statements, and provided opinions that addressed the facts of the case and used medical principles that considered whether the Veteran's thoracolumbar spine disability was caused by or was otherwise related to service. They both relied on facts that the Board finds are accurate. Specifically, both examiners did not find evidence of a disease or injury in service and did not find evidence of continuing symptoms in the years following service discharge, which facts were used to find that the evidence did not support a nexus. 

In a July 2020 statement, the Veteran said he felt the July 2020 VA examiner was more professional and objective and asked for VA to review and consider the second examination. As noted previously, the Board finds both the June 2020 and July 2020 VA examinations to be adequate, and the July 2020 opinion is also a negative opinion. Accordingly, the preponderance of the probative evidence is against a nexus between the current cervical spine disability and service, and service connection for a cervical spine disability on a direct basis is not warranted.

While the Veteran believes that the cervical spine disability is related to service, he is not competent to offer nexus opinion as to the etiology of his cervical spine disability, as medical expertise is needed. In this regard, the question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the Veteran's own opinion is nonprobative evidence. At the present time, the preponderance of the evidence is against a finding that the cervical spine disability is caused or due to his military service. Additionally, there is no competent and probative evidence to support the Veteran's claim to weigh against the negative VA nexus opinions. As stated above, the positive opinions are speculative or do not provide a rationale for the conclusions reached. 

In conclusion, for all the reasons described above, the Board finds that the preponderance of evidence weighs against the Veteran's claim for service connection for a cervical spine disability, to include IVDS, spondylosis, degenerative disc disease, degenerative arthritis of the spine, spinal stenosis, and spondylolisthesis. As such, there is no reasonable doubt to be resolved, and the claim for service connection on direct and presumptive bases is denied.

 

 

A. P. SIMPSON

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board N. Griffin, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.